IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
KEVIN WILLIAM SQUIRES,             )
                                   )
               Plaintiff,          )
                                   )
          v.                       )     1:16CV190
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social      )
Security,                          )
                                   )
               Defendant.          )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Kevin William Squires, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 14; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging an onset date of November 1, 2011. (Tr. 166-80.) Upon denial of those applications initially (Tr. 63-79, 107-15) and on reconsideration (Tr. 80-99,

118-25), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 126). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 28-62), during which Plaintiff amended his onset date to April 1, 2013 (see Tr. 31, 203). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 9-22.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 8, 313-18), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since April 1, 2013, the [amended] alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: degenerative disc disease; chronic pain; depression; and anxiety.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with manipulative and mental restrictions. [Plaintiff] can lift 20 pounds occasionally and he can lift and carry 10 pounds frequently. He can sit, stand, and walk for up to six hours each in an eight-hour workday. He can perform

>     overhead reaching frequently.  He can perform simple,
>     routine tasks.  He can have occasional public contact.
>
>     . . .
>
>     6.    [Plaintiff] is capable of performing past relevant
>     work as a housekeeping cleaner.  This work does not
>     require the performance of work-related activities
>     precluded by [Plaintiff's] residual functional capacity.
>
>     . . .
>
>     7.    [Plaintiff] has not been under a disability, as
>     defined in the [] Act, from April 1, 2013, through the
>     date of this decision.

(Tr. 14-22 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561

(internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

4

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*,
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform light work and his past relevant work as a housekeeper" (Docket Entry 11 at 5 (capitalization omitted)); and

---

[3] (...continued)
pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(2) the ALJ "erred in failing to give controlling weight to the opinion of the treating physician" (id. at 6 (capitalization omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 15 at 4-10.)

### 1. RFC

In Plaintiff's first assignment of error, he contends that the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform light work and his past relevant work as a housekeeper." (Docket Entry 11 at 5 (capitalization omitted).)[5] According to Plaintiff, the ALJ had a "duty to account" (id. at 6) in the RFC for Plaintiff's testimony that he (1) "suffers crying spells at least once or twice a week lasting an hour or so" (id. at 5 (citing Tr. 43)); (2) "suffers from daily anxiety attacks that last between one and three hours" (id. at 6 (citing Tr. 43)); (3) "can stand [for] 15 through 30 minutes, walk only five minutes[,] and [must] use two hands to lift a gallon of milk" (id. (citing Tr. 44)); and (4) "has problems concentrating whether he is reading or on the computer" (id. (citing Tr. 37, 47)). Plaintiff further maintains that the

---

[5] Although Plaintiff states in the heading of his argument that the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform . . . his past relevant work as a housekeeper" (Docket Entry 11 at 5 (emphasis added) (capitalization omitted)), Plaintiff does not develop any argument regarding any alleged inability to perform the duties of his prior work as a housekeeper (see id. at 5-6), but argues more generally that his impairments prevent him from "perform[ing] work at any exertional level" (id. at 6 (emphasis added)). Accordingly, in discussing Plaintiff's first assignment of error, this Recommendation will focus on the ALJ's RFC determination.

8

ALJ "had a duty to account" in the RFC for the opinion of Plaintiff's treating physician, Dr. James B. Holt, who limited Plaintiff to "less than sedentary work." (Id. at 6 (citing Tr. 407-10).) Plaintiff's arguments miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ here sufficiently explained the basis for the RFC determination. (See Tr. 16-21). The ALJ provided a comprehensive

9

review of the medical evidence of record (see Tr. 18-21), and evaluated Plaintiff's subjective complaints, expressly discussing his testimony regarding crying spells, anxiety attacks, and his allegedly limited abilities to stand, walk, and lift a gallon of milk (see Tr. 17). However, the ALJ ultimately found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely credible" (Tr. 19), and supported that finding with reasoned analysis:

> [Plaintiff] has some mild to moderate degenerative disc disease in the cervical spine and very mild degenerative changes in the lumbosacral spine. He does not have any signs of nerve root compression, which might be expected based on the degree of back pain alleged. He has a full range of motion of the spine and has normal neurological findings. He is able to perform heel/toe walk, tandem walk, and squat/rise maneuvers. He has been prescribed narcotic pain relievers for his chronic pain. He has not required surgery or such other aggressive measures for pain relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in [a] physical therapy program. The treatment records indicate that his pain waxes and wanes. He has been able to perform such activities as roofing. Generally, his pain is controlled with only occasional breakthrough symptoms. The treatment regimen, therefore, indicates that [Plaintiff's] symptoms are not as intractable as alleged.
>
> [Plaintiff] has symptoms of anxiety and depression. However, these were responsive to the psychiatric medications that were prescribed. The treatment records indicate that [Plaintiff] continued to seek employment and that he even considered opening his own business. He did not have any significant mental status abnormalities other than in his mood and affect. It is noted that [Plaintiff] has not had any mental health treatment since August 2013, indicating that his anxiety and depression are not as incapacitating as alleged. He has been able to live on his own and to manage his own affairs.

> In addition, the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that [Plaintiff's] allegations of functional restrictions are not fully credible.

(Tr. 19-20).

Plaintiff does not raise any specific challenges to this credibility analysis, but simply argues that the ALJ had a "duty to account" for Plaintiff's subjective complaints in the RFC. (Docket Entry 11 at 6.) Plaintiff's argument misstates the ALJ's duty – the ALJ labors under no obligation to accept Plaintiff's subjective complaints "at face value." Ramos-Rodriguez v. Commissioner of Soc. Sec., Civ. No. 11-1323 (SEC), 2012 WL 2120027, at *3 (D.P.R. June 11, 2012) (unpublished); see also Craig, 76 F.3d at 591 ("[The claimant] believes that the law forbids the ALJ finding her testimony not credible. Instead, presumably, the ALJ was obliged to accept, without more, her subjective assertions of disabling pain and her subjective assessment of the degree of that pain. Of course, that is not and has never been the law in this circuit."); Social Security Ruling 96-7p, Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *4 (July 2, 1996) ("SSR 96-7p") ("In making a finding about the credibility of an individual's statements, the [ALJ] need not totally accept or

totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the [ALJ] may find all, only some, or none of an individual's allegations to be credible.").[6]

Rather, the ALJ must analyze and weigh such complaints in compliance with the applicable regulations, Social Security Rulings, and Fourth Circuit precedent, which require the ALJ to consider the consistency of a claimant's subjective complaints with the record as a whole. See SSR 96-7p, 1996 WL 374186, at *2 ("[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.");

---

[6] Effective March 28, 2016, see Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superceded SSR 96-7p with Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. Plaintiff here does not argue that SSR 16-3p, rather than SSR 96-7p, applies to the ALJ's evaluation of his subjective complaints. (See Docket Entry 11 at 5-6.) Moreover, the ALJ's decision in this case predates the effective date of SSR 16-3p, and, because SSR 16-3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.) (recommendation); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.). Accordingly, this Recommendation will apply SSR 96-7p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

12

see also 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("[A claimant's] symptoms, including pain, will be determined to diminish [] capacity for basic work activities . . . to the extent that [] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."); Craig, 76 F.3d at 595 ("[A] claimant's allegations about her pain . . . need not be accepted to the extent they are inconsistent with the available evidence."). The ALJ's above-quoted credibility analysis complies with that authority, and finds support in substantial evidence of record.

Plaintiff additionally contends that the ALJ failed to account in the RFC for treating physician Dr. Holt's opinion that Plaintiff remained capable of less than a full range of sedentary work. (See Docket Entry 11 at 6 (citing Tr. 407-10).) However, as discussed in more detail below in connection with Plaintiff's second assignment of error, the ALJ discounted Dr. Holt's opinion, and supported that analysis with substantial evidence. (See Tr. 20.)

In sum, Plaintiff's first claim on review fails to entitle him to relief.

## 2. Treating Physician's Opinions

In Plaintiff's second issue on review, he alleges that the ALJ "erred in failing to give controlling weight to the opinion of [Plaintiff's] treating physician," Dr. Holt. (Docket Entry 11 at

13

6 (capitalization omitted).) Plaintiff further asserts that, "even if the ALJ d[id] not find that [the] treating source's opinion [wa]s [] entitled to controlling weight, the ALJ [wa]s required to consider certain factors in evaluating the medical source opinion." (Id. at 7-8 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).) According to Plaintiff, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even it if does not meet the test for controlling weight." (Id. at 8 (citing Social Security Ruling 96-2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *4 (July 2, 1996)).) Plaintiff's contentions fall short.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. For example, the nature and extent of each treatment relationship may appreciably temper

14

the weight an ALJ affords an opinion. 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590 (emphasis added).

In this case, on November 18, 2013, Dr. Holt completed a Medical Source Statement ("MSS") on which he opined that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds (<u>see</u> Tr. 407), stand and walk for two hours total in a work day, sit for less than six hours total in a work day, and had limited ability to push and/or pull with his upper and lower extremities (<u>see</u> Tr. 408). In addition, Dr. Holt believed that Plaintiff could occasionally climb, but could never balance, kneel, crawl, or stoop (<u>see</u> <u>id.</u>), possessed limited ability to reach and handle (<u>see</u> Tr. 409), and should have limited contact with workplace hazards and pulmonary irritants (<u>see</u> Tr. 410).

15

Here, the ALJ's evaluation of Dr. Holt's opinion complied with the regulatory requirements. The ALJ discounted Dr. Holt's opinion, noting that the "opinion is not supported by his own treatment records, which indicate minimal physical abnormalities and which indicate that [Plaintiff's] pain has generally been responsive to treatment with pain relievers." (Tr. 20.) Earlier in the decision, the ALJ noted as follows with regard to Dr. Holt's treatment records:

> The treatment notes from Dr. Holt indicate that [Plaintiff's] chronic pain has been adequately controlled with opioid management. He is prescribed opana, percocet, and methadone. He has only required visits every few months. The treatment notes indicate that he generally reports feeling well with only minor complaints. He said that he had a good energy level. He had only occasional breakthrough pain. Dr. Holt's treatment notes do not indicate that [Plaintiff] has had any significant physical abnormalities. There is no indication that he has any neurological abnormalities indicative of nerve root compression.
>
> . . .
>
> The subsequent treatment notes from Dr. Holt reveal that [Plaintiff] has continue to have back pain that appears to wax and wane, depending on his activity. At times, he reported . . . being overwhelmed by his chronic back pain, in conjunction with abuse from family members. At other times, he reported having only occasional breakthrough pain. It was noted in January 2013 that his pain had increased after he was roofing the house. He developed neck pain after sleeping on the sofa. [Plaintiff's] physical findings remained the same with no evidence of inflammation or neurological deficits.

(Tr. 18.)

As correctly noted by the ALJ, Dr. Holt's treatment records do not support his extreme restrictions, which effectively would

16

preclude Plaintiff from even sedentary work as generally described, see Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (1983) (noting that sedentary work entails "good use of the hands and fingers for repetitive hand-finger actions[,] . . . and sitting [] generally total[ing] approximately 6 hours of an 8-hour workday"). The record reflects that Plaintiff visited Dr. Holt on 13 occasions between December 16, 2011 and November 17, 2014. (See Tr. 340-51, 374-83, 401-03, 415-30.) At these visits, which consisted primarily of routine follow-ups for pain medication refills, Dr. Holt consistently found Plaintiff's gait normal and his lungs clear, and documented no objective musculoskeletal or neurological abnormalities. (See id.) On the one occasion Dr. Holt made musculoskeletal and neurological findings, he documented that Plaintiff exhibited full range of motion in his cervical spine (see Tr. 416), and normal reflexes, coordination, and sensation (see Tr. 417). Given these record facts, substantial evidence supports the ALJ's decision to discount Dr. Holt's opinion as inconsistent with his own treatment records.

According to Plaintiff, even if Dr. Holt's opinion did not warrant controlling weight, the ALJ erred by failing to weigh Dr. Holt's opinion using the applicable factors in the regulations, "which include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment

17

relationship; (4) support of the opinion afforded by medical evidence; (5) consistency of the opinion with the record as a whole; and, (5)[sic] specialization of the treating physician." (Docket Entry 11 at 7-8 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).) Plaintiff's argument improperly focuses solely on the paragraph in which the ALJ discounted Dr. Holt's opinion. A review of the ALJ's decision as a whole demonstrates that she did consider the relevant factors.

Regarding the length of the treatment relationship and the frequency of examination, the ALJ expressly recited Plaintiff's testimony that Dr. Holt had treated Plaintiff for seven years (see Tr. 17; see also Tr. 47) and observed that Plaintiff "has only required visits [with Dr. Holt] every few months" (Tr. 18). Addressing the nature and extent of the treatment relationship, the ALJ noted that Plaintiff's "chronic pain has been adequately controlled with opioid management," that Dr. Holt "prescribed opana, percocet, and methadone" (id.), and that Plaintiff "has not required surgery or such other aggressive measure for pain relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in [a] physical therapy program" (Tr. 19). Moreover, consistent with the obligation to consider the opinion's relationship to medical evidence and the overall record, the ALJ expressly found that Dr. Holt's own treatment records did not support his opinion (Tr. 20), and noted Plaintiff's own report

18

"that, despite his back pain, he was able to perform all normal activities of daily living" (Tr. 18). Lastly, Plaintiff has identified no record evidence that Dr. Holt practices in an area of medical specialization. (See Docket Entry 11.)

In short, the ALJ did not err in evaluating Dr. Holt's opinion.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 24, 2017